IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | |
|---|---|
| **Lloyd Michael Warren,** ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:22cv489 (LMB/JFA) |
| ) | |
| **Deputy Nina Clasp, et al.,** ) | |
| Defendants. ) | |

MEMORANDUM OPINION

Acting pro se, Lloyd Michael Warren ("plaintiff") filed this civil rights action under 42 U.S.C. § 1983, alleging that officials at Southside Regional Jail violated his constitutional rights by improperly taking money from his inmate trust account and by retaliating against him after he filed this lawsuit. [Dkt. Nos. 1, 29, 30].[1] Deputy Nina Clasp ("defendant" or "Deputy Clasp"), the only defendant who has been served with plaintiff's Amended Complaint, has filed a Motion to Dismiss the Amended Complaint ("Motion").[2] [Dkt. No. 31]. Defendant argues in her Motion, which was accompanied by a proper Roseboro[3] notice, that plaintiff's allegations do not

---

[1] Plaintiff mailed his Amended Complaint in two separate envelopes, perhaps to ensure his stamps were sufficient to cover the weight of the mail. Consequently, the pleading has been entered on the docket in two locations; approximately half has been entered as Docket Entry 29, and the rest has been entered as Docket Entry 30. [Dkt Nos. 29, 30].

[2] Also pending are a Motion to Dismiss plaintiff's *original* Complaint [Dkt. No. 9] and a Motion to Amend Complaint [Dkt. No. 35]. Because the Amended Complaint has replaced the original Complaint as the operative pleading in this action, the first Motion to Dismiss will be denied as moot. Plaintiff's Motion to Amend Complaint merely seeks to correct a defendant's name. [Dkt. No. 35]. That motion will be granted to the extent the Clerk will be directed to update the docket sheet to reflect that the last name of the defendant currently listed as "Bowles" is actually "Boyce."

[3] See Roseboro v. Garrison, 528 U.S. 309 (4th Cir. 1975).

support any viable claim for relief. [Dkt. No. 32]. Plaintiff has filed two pleadings in opposition to defendant's Motion. [Dkt. Nos. 36, 38]. Because Deputy Clasp is correct that the Amended Complaint fails to state any viable claim against her, the Motion will be granted. Moreover, for the reasons explained below, the Amended Complaint fails to state any viable cause of action against any of the defendants. Consequently, this action will be dismissed with prejudice.

## I.     Deputy Clasp's Motion to Dismiss

### A.     Background

The Amended Complaint contains the following factual allegations with regard to Deputy Clasp. On or about March 15, 2022, a $75.00 gift was deposited in plaintiff's inmate trust account. [Dkt. No. 29] at 1; [Dkt. No. 30] at 5. Plaintiff expected 15% of the $75.00 to be deducted from his account to pay his institutional debts, pursuant to a Southside Regional Jail policy. See [Dkt. No. 30] at 4. Deputy Clasp initially collected the proper amount of money, which left plaintiff with $64.29 in his account. Id. at 5. Plaintiff then spent $63.15 at the jail commissary. [Dkt. No. 1-1] at 10. On March 23, 2022, Deputy Clasp took an additional $0.17 from plaintiff's remaining funds, leaving plaintiff with only $0.97 in his account. [Dkt. No. 30] at 5. Then, on March 31, 2022, Deputy Clasp deducted an additional $0.12 from plaintiff's account. Id.; [Dkt. No. 29] at 1. In sum, plaintiff alleges that Deputy Clasp improperly deducted $0.29 more from his $75.00 gift than was proper.

On April 1, 2022, a $125.00 gift was deposited in plaintiff's inmate account. [Dkt. No. 30] at 4. Although the jail's policy was to deduct 15% from monetary gifts to pay an inmate's debts, which here would have resulted in a deduction of $18.75, the Amended Complaint alleges that Deputy Clasp deducted $50.54 from plaintiff's account. Id. Plaintiff filed "requests and grievances" and discussed the issue with Lt. Doyle. Lt. Doyle told plaintiff that he had spoken

with Sheriff Wyche and that the money would be credited back to plaintiff's account; however, according to the Amended Complaint, the excess deduction was never credited back to plaintiff's account. [Dkt. No. 30] at 4-5; [Dkt. No. 29] at 1-2.

Finally, on April 30, 2022, plaintiff received a $50.00 gift in his inmate trust account. [Dkt. No. 29] at 2. Although Deputy Clasp initially deducted $7.50—the proper 15% deduction—she later deducted an additional $6.38 from the account. Id. Plaintiff wrote a grievance and received two responses, one from Lt. Doyle and another from Sheriff Wyche, each stating that plaintiff would receive a refund of the money that had been improperly deducted. [Dkt. No. 29] at 3. Plaintiff alleges that Deputy Clasp's acts were intentional, that she is "not professional about her job," does "what she want[s], when she want[s], how she want[s]," and "violated [his] 8th and 14th Amendment ... rights." [Dkt. No. 29] at 1. For these alleged wrongs, plaintiff requests $900,000 in monetary damages and for Deputy Clasp and the other defendants named in the Amended Complaint to be "reliev[ed] ... of their duties." [Dkt. No. 29] at 9.

**B.   *Standard of Review***

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure requires a court to consider the sufficiency of a complaint, not to resolve contests surrounding facts or the merits of a claim. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). To withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To do so, the complaint must allege specific facts in support of each element of each claim it raises;

"threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. Id.

Although a court considering a Rule 12(b)(6) motion is tasked with determining the adequacy of the complaint itself, the reviewing court "may [also] consider official public records, documents central to a plaintiff's claim, and documents sufficiently referred to in the complaint, so long as the authenticity of these documents is not disputed." Stoney Glen, LLC v. S. Bank & Tr. Co., 944 F. Supp. 2d 460, 464 (E.D. Va. 2013); see also Witthohn v. Fed. Ins. Co., 164 F. App'x 395, 396-97 (4th Cir. 2006).

### C.  *Analysis*

Plaintiff argues that Deputy Clasp's actions violated his rights under the Eighth and Fourteenth Amendments. Not only does the Amended Complaint fail to state a claim under either Amendment, it requests outrageous remedies that are grossly out of proportion with the harm plaintiff alleges he suffered. Because plaintiff alleges he was denied the ability to spend only roughly $40.00, his request for $900,000 in damages is frivolous. Complaints seeking payment of damages out of proportion to the harm they allege have been dismissed as frivolous in this jurisdiction. See, e.g., Anderson v. Pollard, No. 3:20cv489, 2020 WL 9349174, at *2 (E.D. Va. Aug. 24, 2020).

### 1.  *Eighth Amendment*

The Amended Complaint's allegations implicate two of the Eighth Amendment's clauses: the Cruel and Unusual Punishment Clause and the Excessive Fines Clause. A prisoner claiming that he suffered cruel and unusual punishment under the Eighth Amendment must show that he endured a "deprivation of [a] basic human need" that was objectively "sufficiently serious" and that, subjectively, the defendant acted with a "sufficiently culpable state of mind." Shakka v.

Smith, 71 F.3d 162, 166 (4th Cir. 1995) (quoting Strickler v. Waters, 989 F.3d 1375, 1379 (4th Cir. 1993)). To be "sufficiently serious," a deprivation must be "extreme"—meaning that it causes "a serious or significant physical or emotional injury" or creates "a substantial risk of such serious harm resulting from … exposure to the challenged conditions." De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (internal quotation marks and citation omitted).

The alleged deprivation in this case is not sufficiently severe to meet the standard for an Eighth Amendment violation. Indeed, although money was periodically deducted from plaintiff's trust account to pay institutional debts, the Amended Complaint does not allege facts that would support a plausible claim that these deductions harmed plaintiff physically or emotionally or deprived him of any "basic human need." See Shakka, 71 F.3d at 166. Instead, despite the alleged improper deductions, plaintiff was able to spend most of the money he received at the jail's commissary, and he does not allege that he was ever left with insufficient money to buy toiletries or other necessities. This Court has previously held that a prisoner facing similar circumstances—that is, one who was charged by prison officials for daily room and board fees but "d[id] not allege that paying the … fee extend[ed] his prison sentence, deprive[d] him of any basic human need, or otherwise render[ed] him without necessities such as food and shelter"—had not suffered any Eighth Amendment violation. See Waters v. Bass, 304 F. Supp.2d 802, 807-08 (E.D. Va. 2004) (Ellis, J.). For the reasons articulated in Waters, the Amended Complaint fails to state a cruel and unusual punishment claim in connection with defendant's withdrawals from plaintiff's inmate account.

The Amended Complaint also fails to state an "excessive fines" claim. By its plain language, the Excessive Fines Clause of the Eighth Amendment can be violated only if the disputed fees are "fines" and are "excessive." See United States v. Bajakajian, 524 U.S. 321,

5

327 (1998). The term "fine," as used by the Supreme Court, refers to a monetary penalty that is imposed as punishment for a criminal offense. Browning–Ferris Industries of Vt., Inc. v. Kelco Disposal Inc., 492 U.S. 257, 265 (1989) (holding that Excessive Fines Clause does not apply to civil-jury award of punitive fines); see also Thomas v. Commissioner, 62 F.3d 97, 102 (4th Cir. 1995) (affirming imposition of additional deficiency tax as non-punitive in nature and not violative of the Eighth Amendment).

Here, the documentation plaintiff submitted with his original complaint indicates that he had accrued hundreds of dollars in debt at Southside Regional Jail. See [Dkt. No. 1-1] at 6-11. Those records show, and plaintiff does not contest, that the monetary gifts deposited in his inmate account were garnished to offset those debts. Consequently, the money that was taken from plaintiff was not taken to punish him; rather, the deductions were simply "fee[s] to cover (to a small extent), a cost." Waters, 304. F. Supp. 2d at 809. Jail officials therefore did not violate the Excessive Fines Clause by deducting funds from plaintiff's account.

    2.    *Fourteenth Amendment*

The Amended Complaint also fails to allege any violation of plaintiff's Fourteenth Amendment rights, under either the Due Process Clause or the Equal Protection Clause. The Due Process Clause provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. § XIV, § 1. Undoubtedly, plaintiff "possess[es] a property interest in the funds in [his] prison account[]." Waters, 304 F. Supp. 2d at 811. Consequently, plaintiff was entitled to some level of process with respect to the deductions from his account; however, "due process is flexible and [only] calls for such procedural protections as the particular situation demands in order to minimize the risk of error." Harrison v. Fed. Bureau of Prisons, 464 F. Supp. 2d 552, 556 (E.D. Va. 2006) (quoting Waters,

304 F. Supp. 2d at 811). Here, only minimal process was required to ensure plaintiff's constitutional rights were not violated.

The Third Circuit's decision in Tillman v. Lebanon Cnty. Corr. Facility is instructive. In assessing a prison's policy to charge inmates a daily $10.00 room and board fee, the Third Circuit stated that it was "impractical to expect [a] prison to provide pre-deprivation proceedings" before taking money from an inmate's account. 221 F.3d 410, 422 (3d Cir. 2000). Because the deductions being assessed "involve[d] routine matters of accounting, with a low risk of error," the Third Circuit reasoned, a prison grievance system could serve as an adequate vehicle to correct mistakes that occurred in account maintenance and thereby satisfy due process. Id. In Harrison, this Court employed the Third Circuit's reasoning, holding that, "where, as here, [a] correctional facility routinely collects fees, or otherwise performs ministerial accounting tasks, procedural due process is satisfied by the availability of a post-deprivation proceeding, namely, the normal prison grievance process." 464 F. Supp. 2d at 556. Plaintiff acknowledges in the Amended Complaint that Southside Regional Jail has a grievance procedure. See [Dkt. No. 1] at 5; [Dkt. No. 30] at 7. Therefore, consistent with the reasoning in Tillman and Harrison, this Court finds that plaintiff's due process rights were not violated because the availability of the grievance procedure satisfied the due process requirement.

Moreover, even if the jail's grievance procedure were somehow insufficient to satisfy due process, plaintiff possessed another post-deprivation remedy in the Virginia Tort Claims Act, through which he could have sought relief. Cf. Cannon v. Hull, No. 1:16cv359, 2018 WL 11469608, at *1 (E.D. Va. Feb. 12, 2018) (observing that the state tort claims act was an adequate post-deprivation procedure in an action alleging that jail officials were "denying

7

prisoners access to [their] funds"). As a result, the Court finds that plaintiff was provided all of the process afforded to him by the Constitution.

Finally, the Amended Complaint fails to state any claim under the Equal Protection Clause. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). In this case, the Amended Complaint does not allege that plaintiff received unequal treatment as compared to other inmates at Southampton County Jail. For all these reasons, the claims in the Amended Complaint against defendant Clasp will be dismissed.

## II.   Screening of Amended Complaint's Other Allegations

The Amended Complaint also seeks relief from defendants Sgt. Matterson, Nurse Boyce, Lt. Doyle, and Sheriff Wyche, who have not yet been served. Because the plaintiff is proceeding in forma pauperis, the Court must screen the Amended Complaint pursuant to 28 U.S.C. § 1915A and determine whether it is frivolous, malicious, or fails to state a viable claim for relief against these defendants. See 28 U.S.C. § 1915A.

The Amended Complaint alleges that Lt. Doyle, who "is in command over Deputy Clasp," failed to correct Clasp's repeated actions despite having "knowledge of this situation." [Dkt. No. 29] at 5-6. As described above, the Amended Complaint failed to state any viable claim for relief against Deputy Clasp. Consequently, the Amended Complaint also fails to state a claim against Lt. Doyle for failing to adequately supervise and correct Deputy Clasp's alleged misconduct. See, e.g., Turner v. Thomas, 313 F. Supp. 3d 704, 715 n.7 (W.D. Va. 2018)

("[T]here can be no supervisory liability when there is no underlying violation of the Constitution.") (citing Doe v. Rosa, 664 F. App'x 301, 303 n.2 (4th Cir. 2016)). For this reason, the claim against Lt. Doyle will be dismissed with prejudice.

The Amended Complaint also alleges that plaintiff suffered retaliation for filing this lawsuit. Specifically, it claims that, on June 13, 2022, Sgt. Matterson filed two institutional charges against plaintiff for fighting. [Dkt. No. 29] at 4. According to the Amended Complaint, the incidents underlying the charges predated the charges by several months. Id. ("One incident was 3 months ago, the other was 2 months ago."). When plaintiff questioned Sgt. Matterson about this delay, Matterson stated that "he was told to" write the charges and said it "was out of his hands." Id. Later, after a disciplinary hearing, the charges against plaintiff were dismissed for lack of evidence. Shortly after the hearing, plaintiff was transferred to Western Tidewater Regional Jail ("WTRJ") at the direction of Sheriff Wyche.[4] Id. at 5.

To state a First Amendment retaliation claim, a complaint must allege that a plaintiff engaged in protected First Amendment activity, that defendants took action that adversely affected the plaintiff's First Amendment rights, and that there was a causal connection between the plaintiff's protected activity and the defendants' conduct. Martin v. Duffy, 977 F.3d 294, 299 (4th Cir. 2020). Plaintiff's filing of this lawsuit unquestionably constitutes protected First Amendment activity, see Booker v. S.C. Dep't of Corrs., 855 F.3d 533, 544 (4th Cir. 2017) ("Booker II"), and the closeness in time between Clasp being served with process and Matterson and Wyche's acts allows for an inference that a causal connection existed, see Cecil v. Winston,

---

[4] The Amended Complaint alleges that plaintiff suffered a variety of hardships upon arriving at Western Tidewater Regional Jail, [Dkt. No. 29] at 6, but the acts of officials at that facility are not fairly attributable to the defendants named in the Amended Complaint. Consequently, the allegations regarding plaintiff's conditions of confinement at Western Tidewater Regional Jaill will not be discussed here.

No. 7:20-cv-349, 2021 WL 3642054, at *8 (W.D. Va. Aug. 17, 2021) ("The temporal proximity between Cecil's first amendment conduct and his move to segregation, then isolation, suggests a causal connection may exist between the two events."). But the Amended Complaint does not identify a sufficiently adverse action to satisfy the second element of the Martin test. "[A] plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights." Constantine v. Rectors and Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005).

Although the filing of a false disciplinary charge against a prisoner can satisfy the second element of a retaliation claim, Booker v. S.C. Dep't of Corrs., 583 F. App'x 43, 44 (4th Cir. 2014) (Booker I), the filing of a legitimate disciplinary charge does not, Richardson v. Ray, 492 F. App'x 395, 396 (4th Cir. 2012). In this case, Sgt. Matterson is alleged to have issued plaintiff two disciplinary citations for fighting. These charges were ultimately dismissed for lack of evidence, but plaintiff concedes in the Amended Complaint that he had been involved in fights, albeit some time before he was issued charges for doing so. Because plaintiff acknowledges that there was some basis for the charges against him, those charges cannot be called false and therefore did not constitute an actionable "adverse action."

For his part, Sheriff Wyche is alleged to have ordered plaintiff's transfer to WTRJ following the dismissal of his disciplinary charges. Such a decision is not typically recognized as an "adverse action" in a retaliation claim. "Since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." Hoye v. Gilmore, 691 F. App'x 764, 765 (4th Cir. 2017) (quoting Siggers-El v. Barlow, 412 F.3d 693, 701 (6th Cir. 2005)). Only when a "transfer would result in

foreseeable, negative consequences to the particular prisoner" is a transfer an actionable basis for a retaliation claim. Hill v. Lappin, 630 F.3d 468, 474 (6th Cir. 2010).

Here, although plaintiff claims he struggled to receive some resources at WTRJ, that cannot be attributed to Sheriff Wyche, who has no control over the conditions at that facility. Moreover, there is no allegation that plaintiff is under stricter security conditions at WTRJ or that WTRJ is inaccessible to his family for visitation. In fact, according to Google Maps, WTRJ is only roughly forty minutes away from Southampton County Jail by car. These factors support the conclusion that the transfer from Southampton County Jail to WTRJ is not an adverse action sufficient to satisfy the second element of the Martin test. Cf. Hoye, 691 F. App'x at 765 (concluding that a prisoner transferred to "a prison on the same security level" and which was "only about an hour further away from his family" had not alleged a retaliation claim).

Finally, plaintiff has named Nurse Boyce as a defendant because between the dates of June 6, 2022 and June 13, 2022 he "went ... without receiving [his] high blood pressure medicine," which caused him to suffer "headaches, dizziness, [and] swollen feet." [Dkt. No. 29] at 5. Plaintiff allegedly spoke about this issue to Sgt. Matterson, who stated that Nurse Boyce was not at the facility but that he would order the medication plaintiff required. Id.

The Amended Complaint clearly fails to state any claim against Nurse Boyce because it describes Nurse Boyce as not being at Southside Regional Jail to provide plaintiff's high blood pressure medication and therefore she could not have had the knowledge required to be held liable for any constitutional violation arising from plaintiff's lack of care.[5] See DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2016) (observing that deliberate indifference is required to

---

[5] The Amended Complaint cannot reasonably be read to suggest that plaintiff's medication was withheld in retaliation for filing this lawsuit. Consequently, the allegations regarding plaintiff's medication are assessed only under the deliberate indifference standard.

11

prove an Eighth Amendment violation for improper medical care and that "an official acts with deliberate indifference if he had actual knowledge of the prisoner's serious medical needs and the related risks, but nevertheless disregarded them").

Finally, even if the Amended Complaint stated a viable claim for relief, plaintiff's unreasonable request for $ 900,000 in damages and the firing of the named defendants warrants dismissal of this civil action as frivolous. See, e.g., Anderson v. Pollard, No. 3:20cv489, 2020 WL 9349174, at *2 (E.D. Va. Aug. 24, 2020).

### III. Conclusion

For the reasons stated above, in an Order that will accompany this Memorandum Opinion, Deputy Clasp's Motion to Dismiss will be granted, the remaining claims against Lt. Doyle, Sgt. Matterson, Sheriff Wyche, and Nurse Boyce will be dismissed, and the Amended Complaint will be dismissed.

Entered this 9th day of February 2023.

Alexandria, Virginia

/s/ _____
Leonie M. Brinkema
United States District Judge